UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLOTTE E. WILLIS, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:17-cv-00615-JMS-DML |
| NANCY A. BERRYHILL,[1] | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Charlotte Willis applied to the Social Security Administration ("SSA") for disability insurance benefits on November 4, 2013, alleging a disability onset date of October 2, 2013. [Filing No. 7-5 at 2.] Her application was denied initially on February 25, 2014, [Filing No. 7-3 at 10], and upon reconsideration on April 22, 2014, [Filing No. 7-3 at 19]. Administrative Law Judge Scot Gulick ("ALJ") held a hearing on August 12, 2015, and issued a decision on August 24, 2015, concluding that Ms. Willis was not entitled to receive benefits. [Filing No. 7-2 at 10-28.] On February 1, 2017, the Appeals Council denied Ms. Willis' request for review, rendering the ALJ's decision the final decision of the Commissioner. [Filing No. 7-2 at 2-5.] Ms. Willis then filed this civil action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's decision. [Filing No. 1.]

**I.**
**STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212,

---

[1] Nancy A. Berryhill, Acting Commissioner of Social Security, is substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d).

1

214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four

is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Willis was born on March 26, 1954, [Filing No. 7-5 at 2], has a high school education, and has previous work experience as a pharmacy technician, [Filing No. 7-6 at 7].[2] Ms. Willis

---

[2] Both parties provided a detailed description of Ms. Willis' medical history and treatment in their briefs. [Filing No. 9; Filing No. 15.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Willis, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

3

worked as a pharmacy technician at CVS Pharmacy for approximately 40 years, and most recently worked for five months as a cashier at CVS. [Filing No. 7-2 at 37.] Ms. Willis claims that she is disabled based on a variety of conditions, which will be discussed as necessary below.

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on August 24, 2015, determining that Ms. Willis was not entitled to receive disability benefits. [Filing No. 7-2 at 10-28.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Willis had engaged in substantial gainful activity[3] since the alleged onset date. [Filing No. 7-2 at 15.]

- At Step Two, the ALJ found that Ms. Willis suffered from the following severe impairments: "degenerative disc disease with spondylosis, minor arthritis of the right shoulder, and osteoarthritis of the knees." [Filing No. 7-2 at 16.]

- At Step Three, the ALJ found that Ms. Willis did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 16-17.]

- After Step Three but before Step Four, the ALJ found that Ms. Willis has the RFC to perform light work with the following specific limitations:

    [Ms. Willis] can lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 of 8 hours; and stand and/or walk for 6 of 8 hours. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but she can never climb ladders, ropes or scaffolds. She can have occasional exposure to humidity and wetness and no exposure to unprotected heights and moving mechanical parts."

    [Filing No. 7-2 at 17.]

---

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

- At Step Four, the ALJ found that Ms. Willis is able to perform her past relevant work as a pharmacy technician. [Filing No. 7-2 at 23.] The ALJ therefore concluded that Ms. Willis has not been under disability since the alleged onset date of October 2, 2013. [Filing No. 7-2 at 24.]

Ms. Willis asked the Appeals Council to review the ALJ's decision, but that request was denied on February 1, 2017, [Filing No. 7-2 at 2-5], rendering the ALJ's decision the final decision of the Commissioner. Ms. Willis then filed this civil action under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's decision. [Filing No. 1.]

## III.
### DISCUSSION

Ms. Willis raises several issues on appeal which the Court will address in turn: (1) whether the ALJ appropriately treated all of the doctors' medical opinions and gave adequate reasoning for his treatment, [Filing No. 9 at 8-12], (2) whether the ALJ erred in Ms. Willis' credibility analysis, [Filing No. 9 at 12-14], and (3) whether the ALJ erred in relying on the vocational expert's responses to hypothetical questions and the Dictionary of Occupational Titles ("DOT"), [Filing No. 9 at 14-16].

### A. ALJ's Treatment of the Evidence

Ms. Willis generally challenges the way in which the ALJ treated various medical records and opinions, arguing that the ALJ did not build an "accurate and logical bridge" in relying on the state agency medical consultants, [Filing No. 9 at 8], did not apply the proper standard in reviewing the medical consultants' opinion, [Filing No. 9 at 8], failed to note the amount of medical records that the medical consultants did not review, [Filing No. 9 at 8], and should have given the treating doctors more weight and failed to give "good reasons" for not doing so, [Filing No. 9 at 9-11].

In response, the Commissioner argues that the ALJ adequately weighed all of the doctors' opinions and gave sufficient reasoning for the treatment of each. [Filing No. 15 at 8-10.]

In reply, Ms. Willis argues that the ALJ was required to apply a more rigorous standard to a medical consultant and failed to do so in this case. [Filing No. 16 at 1.]

Generally, an ALJ will give more weight to an opinion of a source who has examined the claimant than to the opinion of a source who has not examined the claimant.[4] 20 C.F.R. § 404.1527(c)(1). Additionally, the "ALJ has the obligation to consider *all* relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (emphasis added) (citation omitted).

1. Dr. Thomson

Ms. Willis argues that the ALJ failed to give "good reasons" for not affording controlling weight to the opinion of treating doctor, Dr. James Thomson. [Filing No. 9 at 9-12.] Ms. Willis argues that Dr. Thomson's opinion is entitled to more weight than the state agency medical consultants because he is the treating doctor and has been treating Ms. Willis for the past forty years. [Filing No. 9 at 9-10.] Furthermore, Ms. Willis contends that Dr. Thomson's opinions are not vague and the MRI and exam results in 2013 and 2014 support his conclusions regarding Ms. Willis's functionality. [Filing No. 9 at 11.]

---

[4] The SSA adopted new rules for agency review of disability claims for applications filed on or after March 27, 2017. 82 Fed. Reg. 5844-01. The new regulations indicate that SSA "adjudicators will [now] articulate how they consider medical opinions from all medical sources, regardless of whether or not the medical source is an [acceptable medical source] . . . ." 82 Fed. Reg. 5844-01. Because Ms. Willis applied for disability benefits before March 27, 2017, these changes do not apply to the review of her claim.

In response, the Commissioner argues that the ALJ appropriately discounted Dr. Thomson's opinion because all physical examinations he performed produced results within normal ranges, and because Dr. Thomson made no reference to medical evidence to support his opinion regarding Ms. Willis' functionality. [Filing No. 15 at 9-10.] The Commissioner argues that the ALJ was not required to give Dr. Thomson's opinion controlling weight and appropriately discounted Dr. Thomson's opinion based upon the lack of medical evidence. [Filing No. 15 at 9.]

In reply, Ms. Willis reiterates that the ALJ did not give good reasons for discounting Dr. Thomson's medical opinion and contends that the exams and MRI results do not show normal functioning. [Filing No. 16 at 2-4.]

A treating doctor's medical opinion is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record. . . ." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). If the ALJ opts not to give a treating doctor's opinion controlling weight, he must provide a sound explanation for his reasons in rejecting the opinion. *Roddy*, 705 F.3d at 636. When determining what weight to give the opinion, the ALJ should analyze whether the doctor (1) examined a claimant, (2) treated a claimant frequently and for an extended period of time, (3) specialized in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, and (5) offered opinions that are consistent with objective medical evidence and the record as a whole. *Roddy*, 705 F.3d at 636-37 (citing 20 C.F.R. § 404.1527(c)(2)(i), (ii)). The Seventh Circuit has explained that an ALJ need not explicitly weigh every relevant factor to conclude that a treating doctor's opinion should be discounted, as long as the ALJ articulates why it is inconsistent with the record. *See Schreiber v.*

*Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). When reviewing medical records that include a "check the box" type of questionnaire, the ALJ may not automatically discount the questionnaire, but instead must evaluate the reasons the doctor gave it support and the other factors listed above to determine the appropriate weight to give to the questionnaire. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

Dr. Thomson was Ms. Willis' treating doctor for forty years, [Filing No. 9 at 9], and completed a variety of reports regarding Ms. Willis' medical conditions. In July of 2015, Dr. Thomson completed a "Physician's Questionnaire" for Ms. Willis, which contained questions related to Ms. Willis' ability to perform work-related activities. [Filing No. 7-10 at 84.] On this questionnaire, a number of activities were listed with corresponding check boxes to indicate time limitations for each activity, as shown below:

> To determine your patient's ability to do work-related activities on a day-to-day basis in a regular work setting, please give us your opinion – based on your examination – of how your patient's physical capabilities are affected by the impairment(s). Do not consider your patient's age, sex or work experience. Consider the medical history, the chronicity of findings (or lack thereof), symptoms (including differing individual tolerances for pain, etc.), and the expected duration of any work-related limitations.
>
> 1. Maximum ability to stand (with normal breaks) during an 8-hour day.
>
> [ ] No limit  [ ] about 6 hrs.  [ ] about 4 hrs.  [ ] about 3 hrs.  [X] about 2 hrs.  [ ] less than 2 hrs.
>
> 2. Maximum ability to walk (with normal breaks) during an 8-hour day.
>
> [ ] No limit  [ ] about 6 hrs.  [X] about 4 hrs.  [ ] about 3 hrs.  [ ] about 2 hrs.  [ ] less than 2 hrs.
>
> 3. Maximum ability to sit (with normal breaks) during an 8-hour day.
>
> [ ] No limit  [ ] about 6 hrs.  [X] about 4 hrs.  [ ] about 3 hrs.  [ ] about 2 hrs.  [ ] less than 2 hrs.
>
> 4. What medical findings support the limitations described above?
>    Degenerative Disc Disease
>    Osteoarthritis
>    Chronic Lower back pain
>
> DATE 7/31/15    James W. Thomson, D.C.    472

[Filing No. 7-10 at 84.]

As shown above, Dr. Thomson indicated that Ms. Willis required limitations in standing, walking, and sitting. At the bottom of the questionnaire, which provided a space for the doctor to identify his medical findings that support the limitations listed, Dr. Thomson wrote, "Degenerative Disc Disease," "Osteoarthritis," and "Chronic Lower back pain." [Filing No. 7-10 at 84.] No other information or evidence is provided on the form except for the date and Dr. Thomson's signature. [Filing No. 7-10 at 84.]

9

The ALJ discussed the medical records from Dr. Thomson in his opinion and noted the following:

> The record contains treatment notes from Dr. James Thomson, the claimant's treating physician. In January, February and April 2014, the claimant's physical examinations were normal. In May 2014, the claimant reported pain in the bilateral hands and shoulders. She noted that her car was broken into and her medications stolen, and that she needed more. In July 2014, she complained of pain in the tops of her legs and inner thighs with swelling of the right leg. However, her physical examination was within normal limits. In August 2014, the claimant wanted a steroid shot due to "hurting all over." A note dated October 14, 2013 referred to Dr. Robert's recommendation for surgery, but also stated that Dr. Sifiri disagreed. . . .On February 13, 2015, the claimant complained of bilateral arm pain. X-rays of the bilateral shoulders revealed deformity of the distal right clavicle suggestive of prior subacromial decompression, clinical correlation was recommended[.] Also present was degenerative changes of the right glenohumeral joint and left AC joint arthropathy. A note from May 2015 indicated that the claimant took more medications than she was supposed to. She complained of left knee pain and swelling after slipping on some pig dung, but her physical examination was normal. The assessment was osteoarthritis.

[Filing No. 7-2 at 20-21 (citations omitted).] The ALJ also acknowledged Dr. Thomson's questionnaire from July of 2015 and stated:

> The claimant's treating physician, Dr. James Thomsom [sic], completed a physician's questionnaire on July 31, 2015. He opined that the claimant could stand about 2 hours in an 8-hour day, walk about 4 hours in an 8-hour day, and sit about 4 hours in an 8-hour day, all with normal breaks. He reported that the claimant had degenerative disc disease, osteoarthritis, and chronic lower back pain. However, I give this little weight, as the questionnaire is a simple "check the box" type form that does not offer any rationale as to why the claimant has these limitations.

[Filing No. 7-2 at 23 (citations omitted).]

The ALJ's discussion does not show that he adequately reviewed and considered Dr. Thomson's medical records in discounting his opinions. First, while the ALJ did acknowledge several of Dr. Thomson's copious treatment notes from 2013 to 2015, [Filing No. 7-2 at 20-21], he did not address the fact that Dr. Thomson had treated Ms. Willis for forty years. Nor did the

ALJ discuss any of Dr. Thomson's treatment notes prior to 2013, which are relevant insofar as they demonstrate the consistency of Dr. Thomson's opinions.

Most critically, however, the ALJ emphasized that several of Dr. Thomson's evaluations in 2014 reflected normal physical examinations in spite of Ms. Willis's complaints of pain. [Filing No. 7-2 at 20-21.] However, as Ms. Willis demonstrates, not all of the results show normal examinations. In fact, the ALJ failed to mention consistently abnormal neurological findings[5] that may well be relevant to the ALJ's assessment of Ms. Willis' allegations of pain and Dr. Thomson's medical questionnaire. Specifically, the ALJ made no mention of any "abnormal" neurological findings, including those recorded in notes from visits on:

- May 21, 2013, [Filing No. 7-10 at 41],
- May 29, 2013, [Filing No. 7-10 at 41],
- June 2, 2013, [Filing No. 7-10 at 12],
- June 11, 2013, [Filing No. 7-10 at 44],
- October 14, 2013, [Filing No. 7-10 at 9],
- December 2, 2013, [Filing No. 7-10 at 10],
- May 8, 2014, [Filing No. 7-10 at 7],
- January 26, 2015, [Filing No. 7-10 at 4], and

---

[5] Neurological conditions impact the "brain, spinal cord, and nerves," Nat'l Institute of Health, U.S. Nat'l Library of Medicine, *Neurologic Diseases*, MedlinePlus, https://medlineplus.gov/neurologicdiseases.html, and can result in issues such as chronic lower back pain, Nat'l Institute of Neurological Disorders and Stroke, *Low Back Pain Fact Sheet*, https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Low-Back-Pain-Fact-Sheet.

- February 26, 2015, [Filing No. 7-10 at 50].[6]

As the ALJ explained, several treatment notes show normal results. However, because the ALJ failed to even mention any of Dr. Thomson's abnormal findings, the Court concludes that the ALJ improperly cherry-picked facts to support his finding of non-disability while ignoring evidence that may support a finding of disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Remand is therefore required so the ALJ may reevaluate Dr. Thomson's questionnaire and Ms. Willis' subjective complaints in light of all of the relevant evidence.

### 2. Dr. Dubois

Ms. Willis also argues that the ALJ failed to give "good reasons" for not affording more weight to the opinions of consultative examiner Dr. Bradley Dubois. [Filing No. 9 at 9-12.] Ms. Willis argues that the statements of Dr. Dubois are not vague, and specifically argues that Dr. Dubois concluded that Ms. Willis is unable to stand or walk for two hours and unable to lift and carry more than seven pounds. [Filing No. 9 at 10-11.]

The Commissioner argues that Dr. Dubois' use of the terms "mild," "moderate," and "severe" were too vague for the purposes of the SSA and that Dr. Dubois did not give specific limitations of Ms. Willis' functionality, but rather made notations reflecting Ms. Willis' complaints. [Filing No. 15 at 10-11.]

---

[6] There were other abnormal findings throughout Dr. Thomson's notes, but they relate to other conditions and not specifically to the pain Ms. Willis complains of in this appeal. [*See* Filing No. 7-10 at 4; Filing No. 7-10 at 5; Filing No. 7-10 at 11; Filing No. 7-10 at 13; Filing No. 7-10 at 42; Filing No. 7-10 at 44; Filing No. 7-10 at 46; Filing No. 7-10 at 46; Filing No. 7-10 at 48; Filing No. 7-10 at 49; Filing No. 7-10 at 51.]

In reply, Ms. Willis contends that Dr. Dubois based his limitations and opinion on objective medical evidence and that the ALJ erred by not giving any explanation as to why he gave Dr. Dubois lesser weight. [Filing No. 16 at 2-4.]

As stated above, an ALJ considers many factors in deciding the weight to give any medical opinion. 20 C.F.R. § 404.1527(c). One of those factors is the "supportability" of the opinion, which includes, among other things, that "[t]he better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(c)(3).

Dr. Dubois examined Ms. Willis in January of 2014. [Filing No. 7-7 at 4-7.] First, Dr. Dubois reviewed Ms. Willis' medical history, medications, and complaints. [Filing No. 7-7 at 4-5.] Second, Dr. Dubois explained the results of his physical examination. [Filing No. 7-7 at 5-6.] In this section, Dr. Dubois also listed any relevant subjective complaints. For example, under "Extremities," Dr. Dubois reported his examination results and also explained as follows: "The patient states she doubts she could stand or walk two hours out of an eight-hour day even if allowed frequent breaks. She states as far as lifting she is on a 7-pound weight restriction. She does not think she could carry the 7 pounds any significant distance." [Filing No. 7-7 at 6.] At the end of his report, Dr. Dubois provided the following assessment:

> ASSESSMENT/PLAN: Test results: I felt her right shoulder and right hip were most significant areas of pain. Her right shoulder a moderate degree of osteoarthritis, mostly affecting the AC joint. There was some bone necrosis of the proximal head of the humerus, which most likely was from her previous surgery. Her right hip showed what I felt was a moderate degree of osteoarthritic changes consistent with her history.
>
> 1. Right hip pain secondary to osteoarthritis, which may be related to previous trauma. Expected duration would be a lifetime would be a lifetime. This, again would probably improve with hip replacement surgery.
> 2. Low back pain secondary to degenerative disk disease. She states she is planning an upcoming laminectomy with fusion; this may or may not dramatically improve her pain.
> 3. Retinal detachment right eye. Expected duration should be short-lived in that laser surgery is fairly effective.
>
> Medical source statement: Physical based on objective data, the patient has the following limitations in work related activities: Sitting; mild. Walking; moderate. Standing; moderate.

[Filing No. 7-7 at 6.]

> Lifting; severe. Carrying; severe. Handling objects; none. Hearing, seeing and speaking; none. Mentally the patient seemed to have good memory, sustained concentration, persistence and social interaction.

[Filing No. 7-7 at 7.] As shown, at the bottom of the assessment, Dr. Dubois provided a "Medical source statement" listing various work related limitations with one word descriptors of "mild," "moderate," or "severe." [Filing No. 7-7 at 6-7.] Dr. Dubois did not provide a key to indicate what the descriptors meant.

The ALJ discussed Dr. Dubois' medical findings, [Filing No. 7-2 at 20], but found that the limitations on work-related activities suggested by Dr. Dubois ("mild," "moderate," and "severe") were too vague to warrant more than little weight, [Filing No. 7-2 at 22].

The ALJ properly gave little weight to Dr. Dubois' suggested limitations, as the ALJ is not required to assume that Dr. Dubois meant to use the terms "mild," "moderate," and "severe" as defined in the regulations. *See, e.g.*, *Austin v. Barnhart*, 83 F. App'x 812, 816 (7th Cir. 2003) (holding that ALJ properly discredited a medical opinion where the physician failed to define

14

rating system). Nor did Dr. Dubois specifically identify functional limitations as Ms. Willis suggests. The only specific limitations referenced in the entirety of Dr. Dubois' opinion were those in the "Extremities" section of the opinion, as told to Dr. Dubois by Ms. Willis. The ALJ was not required to credit that portion of Dr. Dubois' opinion on that basis. *See Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004)* (holding that the ALJ may discredit portions of medical opinions reflecting subjective complaints). Therefore, while the ALJ is free to revisit the issue on remand, the ALJ did not commit reversible error in assigning little weight to Dr. Dubois' opinion.

**B. Remaining Issues**

Because the Court has found that the ALJ committed reversible error in his treatment of Dr. Thomson's opinion, the Court summarily addresses the other issues raised by Ms. Willis.

First, Ms. Willis argues that the ALJ inappropriately gave great weight to the state agency reviewing physicians' opinions. [Filing No. 9 at 8.] The ALJ's primary justification for the weight assigned was that the reviewing physicians' opinions better reflected the medical evidence than did the treating physicians' opinions. [Filing No. 7-2 at 22.] Should the ALJ determine on remand that Dr. Thomson's opinion warrants greater weight in light of his consistent abnormal neurological findings, and his very lengthy treatment history, the ALJ will also be required to revisit the weight assigned to the state agency reviewing physicians' opinions.

Next, Ms. Willis argues that the ALJ did not appropriately "evaluat[e] [her] credibility, subjective complaints and pain." [Filing No. 9 at 12.] She claims that the ALJ did not give enough weight to her work history or attempt to return to work, [Filing No. 9 at 12], and erred in his evaluation of Ms. Willis' daily activities, [Filing No. 9 at 13-14]. Here, the ALJ mentioned Ms. Willis' daily activities of preparing simple meals, folding laundry, driving a car, sewing, gardening, reading, watching television and using the computer, [Filing No. 7-2 at 18], but did not

15

appear to place undue weight on them. As the Seventh Circuit has held, "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities . . . ." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). However, as noted above, Dr. Thomson's abnormal neurological findings are consistent with Ms. Willis' statements regarding her pain levels. Thus, the ALJ should consider on remand whether her allegations warrant greater weight.

Finally, Ms. Willis argues that the ALJ erred at Step Five because the hypothetical posed to the vocational expert failed to take all of Ms. Willis' actual limitations into account, [Filing No. 9 at 14], and because the Dictionary of Occupational Titles' description of pharmacy technician relied upon by the VE was outdated, [Filing No. 9 at 15]. First, Ms. Willis does not argue that hypothetical posed failed to account for Ms. Willis' RFC as found by the ALJ. Rather, this argument is merely a reassertion of the argument that the ALJ erred in assessing Ms. Willis' RFC. As the Court has explained, however, Ms. Willis' RFC may change on remand after further considering Dr. Thomson's medical records. Second, the ALJ may rely on the DOT "to define the job as it is *usually* performed." S.S.R. 82-61, 1982 WL 31387, at *2 (1982) (emphasis in original). Third, and most critically, Ms. Willis did not object to the vocational expert's reliance upon the Dictionary of Occupational Titles, so any error must be "plain error" to be reversible. Only deficiencies in a VE's testimony that are "readily identifiable without requiring additional interpretation by the ALJ" meet the plain error standard. *Turner v. Colvin*, 2015 WL 1505646, at *3 (S.D. Ind. 2015) (quoting *Whitten v. Colvin*, 2014 WL 3509972, at *5 (S.D. Ind. 2014)). Given that Ms. Willis made no objection regarding the DOT, and does not point out any readily identifiable error in the VE's testimony, the ALJ did not commit reversible error on this point.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Willis benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final Judgment will issue accordingly.

Date: 11/7/2017

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**